**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THOMAS R. L. TARINI,** *et al.*, | : | |
| | : | **Case No. 2:13-CV-1153** |
| **Plaintiffs,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge King** |
| **STEVEN M. L. TARINI,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant Steven Tarini's Motion to Dismiss, and the City of Columbus Division of Police, and Kimberly Jacobs, the Chief of Police's joint Motion to Dismiss. (Doc. 7, Doc. 8). Plaintiffs Thomas and Tammy Tarini bring the following eleven claims. Against only Steven Tarini, Plaintiffs claim: (1) Tortious Interference with Business Relations, (2) Assault; (3) Intentional Infliction of Emotional Distress; and (4) Libel and Slander. Against only the City of Columbus Division of Police, Plaintiffs claim: (1) Failure to Train; (2) Failure to Protect; and (3) Employer Liability. Against both Defendants Steven Tarini and the City of Columbus Division of Police, Plaintiffs claim: (1) Malicious Prosecution – Negligence; and (2) Civil Rights Violation, under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. 1983. Against all three defendants, Plaintiffs claim RICO violations under 18 U.S.C. §§ 1961–1968. Plaintiffs also claim, generally, Loss of Consortium of each spouse. Defendants move to dismiss under Fed. R. Civ. P. (12)(b)(6) for failure to state a claim on which relief can be granted. For the reasons set forth herein, Defendants' Motion is **GRANTED** with respect to Plaintiffs' Federal Claims; this Court accordingly declines to hear Plaintiffs remaining state-law claims.

## II. BACKGROUND

Plaintiffs Thomas and Tammy Tarini are residents of North Carolina, and during the period of alleged conduct, of either North Carolina or Ohio.  (Doc. 3, ¶¶ 1-2).  Plaintiff Thomas Tarini alleges that he was a shareholder in Tarini Cement beginning in 1997.  (*Id.*, ¶ 16).  Around April 27, 2002, Plaintiffs claim that Defendant Steven Tarini, brother of Thomas Tarini and son of Richard Tarini, sent Plaintiffs a letter in which Steven "declared his intentions to have Plaintiffs fail in their business venture," i.e. the cement business.  (*Id.*, ¶ 18; see also Doc 3-2).  Plaintiffs' attorney responded to this letter on behalf of Plaintiffs, "warning Defendant not to carry out his threats," on May 6, 2002.  (*Id.*, ¶ 19)  On May 20, 2002, Plaintiff Thomas Tarini and his father, Richard Tarini, entered into a Stock Purchase Agreement through which Plaintiff purchased 100% of Tarini Cement Contracting, Inc., for $150,000, toward which Plaintiff paid $50,000 and Plaintiff Tammy Tarini contributed her salary. (*Id.*, ¶¶ 20–24; *see also* Doc. 3-3).

Plaintiffs allege an "ongoing pattern" of misconduct by the Defendant that includes, "menacing by stalking, corrupt activity, extortion, tortious interference, and intentional infliction of emotional distress, et cetera."  (Doc. 9 at 2; *see also* Doc. 3 at 4–15).  Plaintiffs contend that Defendant Steven Tarini, a Columbus Police Officer, wearing a badge and gun, along with his brother John Tarini, coerced an employee of Tarini Cement through threats of future police harassment, to provide them access to the property, at which time they allegedly took computers and various files from the business.  (Doc. 3, ¶¶ 28–31).  Plaintiffs further allege that after reporting the theft to defendant City of Columbus Division of Police, no action or investigation was undertaken nor charges filed. (*Id.*, ¶¶ 33–35).

Plaintiffs maintain that around June 18, 2002, Defendant Steven Tarini, "caused a report to be made alleging domestic violence by Plaintiff Thomas Tarini against John Tarini." (*Id.*, ¶ 37).  On the same day, Plaintiffs allege that Thomas Tarini was arrested on the basis of the

domestic violence warrant; the charge was dismissed on December 3, 2002.  (*Id.*, ¶ 41).

Plaintiffs attest that charges of aggravated menacing were levied against Thomas Tarini as the

result of Defendant Steven Tarini changing Richard Tarini's phone to forward all calls to the

phone of Terri Staral, a Tarini Cement employee, and then allegedly advising Terri Staral to file

the complaint against Thomas Tarini.  (*Id.*, ¶¶ 42-44).  Plaintiffs attest that this charge was also

dismissed on December 3, 2002.  (*Id.*, ¶ 45) (Plaintiffs later declare that around June 19–26,

2002, Defendant Tarini again changed Richard Tarini's phone to forward calls to Ms. Staral and

then caused a filing in Franklin County Municipal Court that alleged harassment and violation of

a protective order (Doc. 3, ¶¶ 61–62)).

Plaintiffs assert that around June 20, 2002, Brian DuPont, an employee of Champaign

Bank in Dublin, Ohio, cancelled Thomas Tarini's business loans for Tarini Cement upon

receiving a phone call from Defendant Steven Tarini in which Steven falsely alleged that

Thomas "was dealing drugs."  (*Id.*, ¶¶ 46-48).  At that time, DuPont informed Plaintiff Thomas

Tarini that Defendant Steven Tarini had also indicated that he planned to call children services to

keep the children of Thomas and Tammy Tarini away from them "again."  (*Id.*, ¶ 49).  As a

result of this threat by Defendant Steven Tarini, Plaintiffs moved their family to West Virginia.

(*Id.*, ¶ 50).  Plaintiffs maintain that in a phone call around June 21, 2002, Defendant Steven

Tarini repeated his threat to take the children away.  (*Id.*, ¶ 51).   Plaintiffs also assert that

Defendant urged their father, Richard Tarini, to close the Tarini Cement business account.  (*Id.*, ¶

52).

Plaintiffs contend that at some point between June 19, 2002 and June 26, 2002, an Upper

Arlington Police Officer pulled over Plaintiff Thomas Tarini and ran a warrant check and that at

the time, there were no warrants issued. (*Id.*, ¶¶ 53-54) Shortly thereafter, Defendant Tarini

allegedly arrived in his personal vehicle and requested that the Officer wait for a warrant to come through; after waiting thirty minutes, the Officer allowed Plaintiff Thomas Tarini to leave. (*Id.*, ¶¶ 55-56). Plaintiffs also contend that sometime between the same dates listed above, Barron Delp, while house sitting for the Plaintiffs, denied another Upper Arlington Police Office and Defendant Tarini access to Plaintiffs' house when confronted by them without a warrant; Defendant then allegedly threatened Mr. Delp that he would be arrested for "harboring a fugitive." (*Id.*, ¶¶ 57-59).

Plaintiffs aver that on June 28, 2002 Defendant Tarini was waiting across the street when Hilliard Police pulled over Plaintiff Thomas Tarini and performed a warrant check, allegedly at Defendant Tarini's request. (*Id.*, ¶¶ 64-65). Plaintiffs further maintain that Defendant Tarini "called in a warrant he had set-up previously" if the opportunity to arrest Plaintiff presented itself, though Plaintiffs do not state whether Plaintiff Thomas Tarini was in fact arrested. (*Id.*, ¶ 66-67).

Around July 16, 2002, Plaintiff Thomas Tarini allegedly filed a citizen complaint with Defendant City of Columbus Division of Police Internal Affairs Bureau. (*Id.*, ¶ 69). Plaintiffs maintain that on August 2, 2002, a case alleging nine counts of "violation of a protection order" was filed against Plaintiff Thomas Tarini in Franklin County Municipal Court at the urging of Defendant Tarini; they further allege that this case was dismissed on December 3, 2002. (*Id.*, ¶¶ 70-71). Plaintiffs maintain that on August, 16, 2002, Plaintiff Thomas Tarini was arrested at a work yard by Defendant City of Columbus City of Police, and released eight minutes after arriving at the department for processing; Plaintiff was never fully booked. (*Id.*, ¶¶ 72-73).

Plaintiffs attest that on August 24, 2002, a case alleging five counts of telephone harassment was filed against Plaintiff Thomas Tarini, allegedly at the request of Defendant

Tarini. (*Id.*, ¶ 74).  The case was dismissed on December 3, 2002.  (*Id.*)  Plaintiffs further maintain that on September 4, 2002, Plaintiff Thomas Tarini had, at his Upper Arlington home, a scheduled interview with a Sergeant from Internal Affairs of Defendant City of Columbus Division of Police, accompanied by an unknown man, to discuss the threatening phone calls and harassment Plaintiff received from Defendant Tarini; the interview lasted three hours.  (*Id.*, ¶¶ 75-79).  At the end of the interview, Plaintiffs assert that the Sergeant stepped out to make a phone call and the unknown man, who allegedly put his hand on his firearm and unlocked the holster, stayed with Plaintiff Thomas Tarini.  (*Id.*, ¶¶ 80-81).  Plaintiffs maintain that shortly thereafter, three men entered Plaintiffs' home and that "several Upper Arlington police cruisers were positioned on the side street; Plaintiff Thomas Tarini was then arrested for "menacing" and transferred to Defendant Columbus City Division of Police.  (*Id.*, ¶¶ 80-85).  Plaintiff Thomas Tarini was released the next day on bond.  (*Id.*, ¶ 87).

Plaintiffs maintain that between June 2002 and August 2002, "Tarini Cement lost all pending contracts and future work for 2003 was cancelled due to Defendant Tarini's actions, theft, harassment, threats, and tortious interference with business," amounting to about $2.5 million in contracts and $5 million in projected work for 2003. Before this series of events, Plaintiffs allege, Tarini Cement had been operating at 25% margin of profit.  (*Id.*, ¶¶ 88-90). During 2003, while Plaintiffs resided in North Carolina, Plaintiffs allege that Defendant Tarini called Plaintiff Thomas Tarini and threatened that he "had people" looking for Plaintiff.  (*Id.*, ¶¶ 91-92).  Plaintiffs further contend that between January and March of 2004, Defendant Tarini interrupted Plaintiff Thomas Tarini's meeting with an investor and the owners of Epcon Communities, from whom Plaintiff Tarini wanted to buy a franchise to operate in North Carolina, by accusing Plaintiff of dealing drugs, using drug money, and having a poor work

ethic.  (*Id.*, ¶¶ 93-95).  Following the meeting, Plaintiffs allege that Defendant Tarini further interfered with Plaintiff's relationship at Epcon with drug allegations, after which Epcon severed the relationship.  (*Id.*, ¶¶ 97-98).

Plaintiff allegedly formed A&M Tarini Cement Contracting on March 9, 2004, and then lost clients due to Defendant Tarini's tortious interference, which included making allegedly false accusations that Plaintiff does poor work and sells drugs.  (*Id.*, ¶¶ 100-102).  Plaintiffs attest that sometime during 2005, Defendant Tarini called Plaintiff Thomas Tarini and told him that two detectives with the Defendant City of Columbus Division of Police had filed charges against Plaintiffs, and then demanded $3,000 to "ease up" on Plaintiff, threatening to break his legs if he did not comply.  (*Id.*, ¶¶ 103–105).  Also sometime in 2005, Defendant Tarini allegedly continued his threatening phone calls to Plaintiff, including that he would "wring [Plaintiff's] neck," and demanded $48,000.  (*Id.*, ¶ 106).

Beginning around 2005, Plaintiffs maintain that Plaintiff Thomas Tarini was employed to do concrete work by Sperling Concrete and Peachtree Homes, during which his average monthly pay was $5,000 – $6,000.  (*Id.*, ¶¶ 109–110).  Plaintiffs further attest that between 2006 and 2007, Defendant Tarini threatened to sue Plaintiff for breach of a non-compete clause with Tarini Cement.  (*Id.*, ¶ 111).  During the same time period, Plaintiffs allege that a detective with Defendant City of Columbus Division of Police contacted Plaintiff Thomas Tarini to schedule an in-person interview in order to discuss possible embezzlement charges against him.  (*Id.*, ¶ 112).  At that time, Plaintiff Thomas Tarini was told that no charges had been filed and declined the in-person interview but offered an interview by phone, which the detective allegedly declined.  (*Id.*, ¶¶ 112-116).  Defendant Tarini then allegedly called to berate Plaintiff Thomas Tarini for refusing the detective's request for an in-person interview, and demanded money.  (*Id.*, ¶ 117).

In 2007, Plaintiffs allege that Defendant Tarini called Plaintiff Thomas Tarini and said, "[I]f you think the last five years have been bad, you just wait," and then later left a voicemail stating that he would "get" Plaintiff in North Carolina.  (*Id.*, ¶¶ 118-119).  During the same time period, Plaintiff Thomas Tarini, along with a friend, decided to contact his father, Richard Tarini in an effort to bring Tarini Cement to North Carolina; Richard Tarini agreed to meet with them.  (*Id.*, ¶¶ 120-121).  At the aforementioned meeting Richard Tarini asked Plaintiff Thomas Tarini where he was working and Plaintiff responded that he worked for Sperling Concrete and Peachtree Homes, as mentioned above. Shortly thereafter Plaintiff Thomas Tarini alleges that his boss at Sperling called him to terminate his employment, stating that Defendant Tarini had called to inform Mr. Sperling that Plaintiff was dealing drugs.  (*Id.*, ¶¶ 124-125).  When Plaintiff Thomas Tarini later asked Defendant Tarini why he had done that, Defendant Tarini allegedly replied that Plaintiff should never come back to Columbus.  (*Id.*, ¶ 126).

Between 2008 and 2009, Richard Tarini allegedly decided to leave his position at Tarini Cement and hand over the business to Plaintiff Thomas Tarini, during which, Plaintiffs maintain, Richard invested money into Plaintiff Thomas Tarini's on-going projects.  (*Id.*, ¶¶ 129-130).  During the same period of time, Plaintiffs allege that Defendant Tarini contacted Plaintiff Thomas Tarini demanding to know where he worked and threatening that Plaintiff "will not get Tarini Cement back and [you] will not come back to Columbus to work."  (*Id.*, ¶¶ 131-133).  At an unspecified time between 2009 and 2010, Defendant Tarini allegedly told Mark Hockenberry that Plaintiff Thomas Tarini "needed a bullet in the head," which, Plaintiffs allege, scared Mr. Hockenberry enough that he moved away.  (*Id.*, ¶¶ 133-135).

Plaintiffs maintain that Plaintiff Tammy Tarini had a heart attack in February of 2011 after reviewing recorded phone calls and messages between Plaintiff Thomas Tarini and

Defendant Tarini.  (*Id.*, ¶ 136).  In April of 2011, Plaintiff Thomas Tarini allegedly resumed his work for Tarini Cement in Columbus after being unable to find any more work in North Carolina.  (*Id.*, ¶ 137).  Plaintiffs further maintain that in July of 2011, Plaintiff Thomas Tarini visited Defendant Tarini at his home, at Defendant's request, and after handing Plaintiff deposit slips, told Plaintiff to use them to deposit twenty-five percent of his income to Defendant.  (*Id.*, ¶¶ 138–139).  Plaintiffs also contend that on November 18, 2011, Defendant Tarini threatened Plaintiff Thomas Tarini via phone, stating that he will put a "bullet in your head before you ever con him again . . . . [or] take another penny from him, and they will never find your body, do you understand?"  (*Id.*, ¶ 141).

On November 22, 2011, Plaintiff Thomas Tarini filed a Petition for a Domestic Violence Civil Protection Order against Defendant Tarini and a temporary restraining order was issued.  (*Id.*, ¶¶ 142-143).  Plaintiffs allege that a trial began on February 21, 2012, during which Plaintiff Thomas Tarini maintained that Defendant Tarini had threatened him with death and/or "imminent physical harm," and acted in a way that over time constitutes menacing by stalking, allegedly in violation of O.R.C. § 2903.211 and § 3113.31.  (*Id.*, ¶¶ 144-146).  Plaintiffs assert that the conduct they describe caused them great mental distress and belief that they would suffer physical harm.  (*Id.*, ¶ 147).

Plaintiffs further maintain that during the trial, Defendant Tarini testified that he had, in his capacity as a police supervisor, authorized the arrest of Plaintiff Thomas Tarini and that he had been "present and in contact with other agencies" when the Hilliard Police and, presumably on a separate occasion, when the Upper Arlington Police arrested Plaintiff Thomas Tarini.  (*Id.*, ¶¶ 148-149).  Plaintiffs contend that Defendant Tarini also "admitted" during trial that he had made specific threats to Plaintiff Thomas Tarini, and also that his threats about having "people"

in North Carolina looking for Plaintiff Thomas Tarini were meant to "screw" with him, and that it was "psychological warfare."  (*Id.*, ¶¶ 151-154).

Plaintiffs maintain that in 2012, Defendant Tarini sent a letter to Tarini Cement suppliers alleging that Tarini Cement was closing; Plaintiffs attest that this was an attempt to sabotage Plaintiff Thomas Tarini's efforts to resume control of the family company.  (*Id.*, ¶ 140). Plaintiffs also contend that after being allegedly fired from Defendant City of Columbus Division of Police for dishonesty in 2009, Defendant Steven Tarini was reinstated and continued to "abuse his authority as a Police Officer with respect to the Plaintiffs . . ." (*Id.*, ¶¶ 156–159). Plaintiffs further maintain that Defendant City of Columbus Division of Police has a

> [h]istory and pattern and practice of reckless disregard or heedless
> indifference to citizens' civil rights . . . negligent hiring . . .
> tolerating constitutional violations and unlawful conduct . . . and a
> governmental policy and practice of failure to train or discipline
> police misconduct.

(*Id.*, ¶¶ 160-163).  Plaintiffs argue that the conduct alleged of Defendant Tarini constitutes a pattern of tortious conduct that continued until at least December 25, 2012, and that the conduct alleged of Defendant City of Columbus Division of Police constitutes a pattern that continues to the present day, "to the extent that Defendant Tarini is still patrolling the City of Columbus." (*Id.*, ¶¶ 164-165).

Based on the above alleged conduct, Plaintiffs make eleven claims.  (*Id.*, ¶¶ 166-194). Against Defendant Tarini, Plaintiffs claim tortious interference, assault, intentional infliction of emotional distress, and libel and slander.  (*Id.*, ¶¶ 166-167, 172-173, 180-184).  Against Defendant City of Columbus Division of Police, Plaintiffs claim failure to train (*Id.*, ¶ 171), failure to protect (*Id.*, ¶¶ 174-175), and employer liability (*Id.*, ¶¶ 176-179).  Against Defendants Tarini, City of Columbus Division of Police together, Plaintiffs claim malicious prosecution –

negligence (*Id.*, ¶ 168) and civil rights violations under 42 U.S.C. § 1983 (*Id.*, ¶¶ 169-170). Against Defendants Tarini, City of Columbus Division of Police, and Chief of Police Jacobs, Plaintiffs claim RICO violations.  (And against an unnamed defendant, Plaintiffs claim loss of consortium.).

Defendants respond that Plaintiffs allegations are conclusory and without merit, and that the matter is of a personal, intra-family nature.  (See Doc. 7, Doc. 8).  Defendant Tarini argues that Plaintiffs want to hold him accountable for the actions of government entities but offers no evidence that these parties lacked probable cause for their actions.  (Doc. 8 at 3). Defendant Tarini points out that the only arrest referred to in the Complaint occurred in 2002.  (*Id.* at 5). Defendant Tarini further maintains that many of Plaintiffs allegations are unsupported by evidence, such as the 2012 letter that Defendant Tarini allegedly sent to suppliers, and that Plaintiff Thomas Tarini's petition seeking a domestic violence civil protection order in November of 2011 was dismissed after the court found that Defendant Tarini had "never made a credible threat against Plaintiff Thomas Tarini."  (*Id.*).

Defendant City of Columbus, and Chief Jacobs, contend that Defendant Tarini offered to help Defendant move to North Carolina in order to start a business where his reputation had not been damaged, as well as offer other suggestions for his long-term success.  (Doc. 7 at 2). Defendant City of Columbus further maintains that Plaintiffs allegations amount to only unspecified threats on the part of Defendant Tarini (*id.* at 3), and no allegations concerning the conduct of Chief Jacobs, in her official or individual capacity, whatsoever.  (*Id.* at 7).  Defendant City of Columbus also asserts that the only arrests alleged in the Complaint occurred in 2002. (*Id.*).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to

state a claim upon which relief can be granted."  Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005).  Thus, the Court must construe the complaint in the light most favorable to the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions.  *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  But the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'"  *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It must contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

## IV. ANALYSIS

### A.  Fourth and Fourteenth Amendment Claims under § 1983, including Failure to Protect and Failure to Train (claims three, four, and seven)

Defendants Steven Tarini and City of Columbus Division of Police argue that the two-year statute of limitations for § 1983 claims arising in the state of Ohio is an "insurmountable bar to relief." (Doc. 7, at 9; Doc. 8, at 9).  Defendants maintain that Plaintiffs filed their complaint on November 18, 2013, and therefore any allegations purported to have occurred prior to November 18, 2011 are beyond the statutory period.  (Doc. 7, at 9; Doc. 8 at 10).  Defendant City of

Columbus Division of Police further contend that Plaintiffs fail to plead adequately any constitutional violation claims under § 1983. (Doc. 8 at 10).

Plaintiffs, in response, do not concede that they filed their lawsuit outside the applicable statutes of limitation and also argue for the use of the "continuing violation" doctrine. (Doc. 9, at 3). Plaintiffs maintain that the continuing violations doctrine is meant to "allow a plaintiff to seek relief for violations prior to the limitations period, if those violations are part of a pattern of related violations that continue into the limitations period." (Doc. 9, at 4).

Plaintiffs claim Fourth and Fourteenth Amendment violations, enforced under 42 U.S.C. § 1983, against both Defendants Steven Tarini and City of Columbus Division of Police (Doc. 3 ¶¶ 169-170). 42 U.S.C. § 1983 provides in pertinent part:

> Every Person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…., subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The Supreme Court held that § 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1979). Because 42 U.S.C. § 1983 provides no statute of limitations, this Court must refer to the state's applicable limitations period. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). In *Wilson*, the Supreme Court held that each state should borrow a single statute of limitations for § 1983 claims. *See id.* at 275-76. The Court explained that § 1983 claims were best characterized as tort actions for the recovery of damages for personal injuries, and that federal courts must borrow the state's statute of limitations governing personal injury actions. *Id.* Subsequently, the Sixth Circuit held that the statute of limitations for an action under § 1983

12

in Ohio must be brought within two years of accrual, pursuant to Ohio Rev. Code § 2305.10. *See Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) (en banc); *see also Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003); *Tackett v. Marion County Fair Bd.*, 272 F. Supp. 2d 686, 689 (N.D. Ohio 2003). On the other hand, "federal law governs the question of when that limitations period begins to run." *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the party knows or has reason to know of the injury that is the basis of his action. *Id.* at 273. Plaintiffs filed their complaint on November 18, 2013, and accordingly, any conduct alleged before November 18, 2011, falls outside the appropriate statutory period.

The conduct alleged by Plaintiffs does not fall within the narrow scope of the continuing violations doctrine. The Sixth Circuit has been consistently disinclined to extend the continuing violations doctrine outside the context of Title VII cases, with only rare application in § 1983 claims. *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1106 n.3 (6th Cir. 1995). Indeed, the doctrine was developed in response to the nature of race and sex discrimination as a more long-term development, versus discrete instances of discrimination, and the often short-term deadlines provided by Title VII versus longer periods provided for in § 1983. *Bell v. Chesapeake & Ohio Ry. Co.*, 929 F.2d 220, 223 (6th Cir. 1991); *Lee v. City of Columbus, Ohio*, No. 2:07-CV-1230, 2008 WL 5146504 (S.D. Ohio Dec. 5, 2008). On the issue of statutes of limitation generally, the Supreme Court in *Am. Pipe & Constr. v. Utah* opined:

> Statutory limitation periods are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free

of stale claims in time comes to prevail over the right to prosecute
them.

*Am. Pipe & Constr. v. Utah*, 414 U.S. 538, 554 (1974) (quoting *Order of R.R. Telegraphers v.*

*Ry. Express Agency*, 321 U.S. 342, 348-49 (1944)).

Plaintiffs' claims under § 1983— for civil rights violations under Fourth and Fourteenth
Amendment Claims, failure to protect, and failure to train (claims three, four, and seven) —are
beyond the statutory period.  Plaintiffs only conclusorily allege that:

> The foregoing pattern of conduct of Defendant Tarini's tortious
> conduct continued until at least December 25, 2012 . . . The
> foregoing pattern of conduct of Defendant City of Columbus
> Division of Police Continues to the present day to the extent that
> Defendant Tarini is still patrolling the City of Columbus.

(Doc. 3, ¶¶ 164-165).  Plaintiffs do not allege any specific conduct on the part of either

Defendants on or after November 18, 2011 that could be construed as related to claims three,

four, or seven.  Accordingly, and for the aforementioned reasons, the two-year statute of

limitations for § 1983 claims proves to be an insurmountable bar to relief for Plaintiffs as against

both Defendants Steven Tarini and the City of Columbus Division of Police.  Plaintiffs' third,

fourth, and seventh claims are therefore dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### B.  RICO Claim (tenth claim) under 18 U.S.C. § 1962(c) and (d):

Defendants argue for the dismissal of Plaintiffs' RICO action for failure properly to state

the claim.  (Doc. 7 at 16; Doc. 8 at 11).  City of Columbus Division of Police argue for the

dismissal of Plaintiffs' RICO claims on the grounds that the Division of Police, a municipal

entity, cannot, as a matter of law, form the requisite intent necessary to establish a RICO claim.

(Doc. 7 at 16).  Defendant Chief Jacobs asserts that a RICO claim was not properly alleged

against her, in that Plaintiffs failed to plead any "factual allegations" concerning Chief Jacobs'

conduct, or specifically indictable conduct.  (Doc. 7 at 17).

14

Defendant Tarini further maintains that any RICO claim must fail because an "enterprise" is an essential element of their claim, and in pleading that Defendant Division of Police is the "enterprise" have failed the pleading standard.  Defendant Tarini asserts, as does the Division of Police, that, as a matter of law, the Division of Police cannot form the intent necessary to establish a RICO claim. (Doc. 8 at 12).  Defendant Tarini, moreover, argues that Plaintiffs fail to allege conduct that would support a RICO claim within the applicable four year statute of limitations.  (*Id.*).

Plaintiffs, relying on cases from the Seventh Circuit, argue that "governmental or public entities fit within the definition of 'enterprise' for the purposes of RICO."  (Doc 9 at 10). Plaintiffs, moreover, allege that in addition to the Seventh Circuit, the Second, Third, Fourth, Fifth and Eighth Circuits have held that "a government unit may be an 'enterprise' under RICO." (*Id.*) (citing *United States v. Clark*, 646 F.2d 1259 (8th Cir. 1981); *United States v. Angelilli*, 660 F.2d 23 (2d Cir. 1981)).

Plaintiffs claim violations against Defendants Steven Tarini, the City of Columbus Division of Police, and Chief of Police Jacobs under the Racketeer Influenced and Corrupt Organizations Act, specifically 18 U.S.C. § 1962(c) and (d).  (Doc. 3 at 18; Doc 19 at 1).  The statutory language pertinent to Plaintiffs' RICO claims is as follows:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. §§ 1962(c) & (d).

In order to sustain a RICO claim, a plaintiff must allege in the complaint: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *West Hills Farms, LLC v. ClassicStar Farms, Inc.*, 727 F.3d 473, 483 (6th Cir. 2013); *Mathis v. Ohio Dept. of Job & Family Servs.*, No. 2:11-cv-395, 2011 WL 5075824, at *2 (S.D. Ohio Oct. 25, 2011) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Additionally, a plaintiff must establish "the existence of an illicit agreement to violate the substantive RICO provision." *Id.* (citing *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)).

The Sixth Circuit has indeed held that counties and municipalities cannot form the intent necessary to be held liable under RICO laws. *Mathis*, 2011 WL5075824, at *2 (citing *Call v. Watts*, No. 97-5406, 1998 WL 165131, at *2 (6th Cir. Apr. 2, 1998) (counties are not persons under RICO because they lack the ability to form the intent necessary to commit the predicate acts); *Cargile v. Michigan*, No. 10-10072, 2010 WL 3222024 (E.D. Mich. June 18, 2010)). The court in *Cargile* held that "municipal defendants cannot form the requisite criminal intent to be held liable under the civil RICO laws . . . ," and granted a motion to dismiss where plaintiff asserted RICO claims against the defendants the State of Michigan and various cities and townships within that state. *Cargile*, 2010 WL 3222024, at *6-7.

There seems to be confusion among both Plaintiffs and Defendants regarding the distinction between whether a RICO claim can be maintained against a municipal defendant and whether a municipal entity can be the named "enterprise" in a well-pleaded RICO claim. These prove to be two distinct issues. As discussed above, courts in this Circuit have held that a RICO action cannot be maintained against a municipal entity, and therefore Plaintiffs' RICO claims against Defendant City of Columbus Division of Police must be dismissed.

The pertinent issue here, however, seems to be whether the complaint sufficiently pleads those individuals or group of individuals that must form the "enterprise," not how that enterprise is named.  Plaintiffs argue in their response to Defendants' motions to dismiss that only the Sixth Circuit has held that governmental entities cannot form the requisite intent.  (Doc. 9 at 10) (citing *United States v. Thompson*, 669 F.2d 1143 (6th Cir. 1982)).  This case, however, was reheard en banc later that year, holding that the RICO convictions and sentences made through voluntary guilty pleas would not be invalidated because the "enterprise" named was "The Office of Governor" of that state.  *United States v. Thompson*, 685 F.2d 993 (6th Cir. 1982) (en banc). This is an altogether different issue than whether a RICO action can be maintained against a municipal or governmental entity.

Upon rehearing the issue of what may constitute an "enterprise" under the Act, the Court of Appeals effectively held that it is not the name of the "enterprise" itself but what that enterprise represents, inasmuch as the pleading has adequately alleged:

> facts in sufficient detail to allege an 'enterprise' within the purview of the Act. The indictment here [in the case cited] has clearly alleged predicate illegal undertakings by a group of individuals working together.

*Id.* at 999 (quotation omitted).  The Court seems to opine that a governmental entity can be named as the "enterprise" but the pleading, as to the individuals that make up that "enterprise," must be specific and well pleaded. The Act, after all, does not require nor intend that the "enterprise" be a legitimate one.  *United States v. Sutton*, 642 F.2d 1001, 1003 (6th Cir. 1980).

The Court of Appeals further held in *Thompson* that it is may be inappropriate to name a governmental entity as the "enterprise" in an indictment, noting that, "such language may also needlessly cast unfair reflection upon innocent individuals."  *Thompson*, 685 F.2d at 1000.  In addition, the Court held that its preference is for language that "would have alleged that the three

defendants constituted a 'group of individuals associated in fact although not a legal entity which made use of the Office of Governor of the State of Tennessee' for the particular racketeering activities alleged in the indictment."  *Id.*

The Supreme Court held in *Cedric Kushner Promotions* that, "[we] do not quarrel with the basic principle that to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same "person" referred to by a different name."  *Cedric Kishner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *see also In re ClassicStar Mare Lease Litigation*, 727 F.3d 473 (6th Cir. 2013).  Plaintiffs name as the "enterprise" the City of Columbus Division of Police.  (Doc. 3, ¶ 190; Doc. 19 at 3).  The proper question at issue, therefore, is not whether the City of Columbus Division of Police can be the named "enterprise" but whether Plaintiffs clearly allege in their complaint the necessary predicate acts undertaken by individuals working together.

Plaintiffs fail to plead adequately their RICO claim against Defendant Jacobs.  The Supreme Court held in *Iqbal* that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 at 678 (quoting *Twombly*, 550 U.S. at 555).  The only reference to Defendant Jacobs in Plaintiffs' complaint is in paragraph 191:

> Defendant Kimberley Jacobs [Chief of Police] and Defendant City of Columbus Division of Police acquiesced in, and aided and abetted such conduct of Defendant Sergeant Tarini, in that they were aware of the conduct, and failed to take adequate remedial action;

(Doc. 3, ¶ 191).  The above pleading is not sufficient to sustain a RICO action against a motion to dismiss.

In *Reeves*, the petitioners argued that the word "participate" acts as a synonym for "aid and abet." *Reves v. Ernst & Young*, 507 U.S. 170, 178 (1993).  In response, the Supreme Court ruled that "within the context of § 1962(c), 'participate' appears to have a narrower meaning," and, more specifically, that "participate" means "to take part in." *Id.*  A court in this circuit held that a pleading was insufficient where the plaintiff alleged "knowledge" on the part of defendant of "fraudulently obtained funds," but sufficient where the plaintiff maintained, with specificity, that the defendants "both agreed to violate RICO and actually violated RICO." *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 670, 681-82 (E.D. Mich. 1996).  This is distinguished from a defendant who allegedly "knowingly" made decisions on behalf of the enterprise or carried them out. *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008).

Plaintiffs fail to plead a sufficiently active or direct role on the part of Defendant Jacobs; to allege that Defendant Jacobs "acquiesced in, aided and abetted" clearly does not fulfill the standard set by the Supreme Court for an adequately pleaded RICO claim. *See Sedima*, 473 U.S. at 496. Accordingly, Plaintiffs' RICO claim against Defendant Jacobs is properly dismissed.

Plaintiffs' claim against Defendant Tarini fails to establish a "pattern of racketeering activity." *Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783, 795 (6th Cir. 2012).  In order to satisfy this prong, the "relationship plus continuity" test must be fulfilled. *Id.*; *see also Brown v. Cassens Trasnp. Co.*, 546 F3d 347, 355 (6th Cir. 2008).  The "relationship prong" is established where the plaintiff shows that the predicate acts have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S 229, 240 (1989)).  Plaintiff, furthermore, must show that the predicate acts are connected to "the affairs and operations" of the enterprise. *Id.*

It is chiefly here that Plaintiffs fail in their pleading.  The conduct that Plaintiffs allege that may be construed as "racketeering activity," which occurs within the applicable four-year statute of limitations, represents conduct wholly personal and separate from activities undertaken by the City of Columbus Division of Police, the named "enterprise."  *Rotella v. Wood*, 528 U.S. 549, 551-55 (2000) (statute of limitations for a civil RICO claim is four years, and accrual begins at the discovery of the injury itself).  Any conduct alleged before November 18, 2009, therefore, is beyond the appropriate scope of this action.

The most recent acts by Defendant Tarini, as alleged by Plaintiffs, that could be construed as being connected to the "affairs and operations" of the City of Columbus Division of Police took place between 2005 and 2007.  (Doc. 3, ¶¶ 103-105).  Plaintiffs allege that in 2005, Defendant Tarini called Plaintiff Thomas Tarini and allegedly told him that two detectives with the City of Columbus Division of Police had filed charges against Plaintiff, and then allegedly demanded $3,000 from Plaintiff and promised to "ease up off Thomas Tarini."  (Doc. 3, ¶¶103-105).  Plaintiffs, furthermore, maintain that "during 2006 and 2007" a City of Columbus Detective contacted Plaintiff Thomas Tarini to schedule an interview to discuss "possible charges of embezzlement against Thomas Tarini."  (Doc. 3, ¶ 112).  Defendant Tarini then allegedly called Plaintiff Tarini and demanded money from him following Plaintiff Thomas Tarini's refusal to engage in an in-person interview with the Detective.  (*Id.*, ¶ 117).

Within the statute of limitations, Plaintiffs allege two acts that could be construed as "racketeering activity."  (*Id.*, ¶¶ 139, 141).  Defendant Tarini allegedly demanded money from Plaintiff Thomas Tarini in July, 2011, the reason for which is not alleged in the complaint, and made a death threat to Plaintiff Thomas Tarini on November 18, 2011.  (*Id.*)  Both these acts are not alleged to be connected to the "affairs and operations" of the City of Columbus Division of

Police, nor do they seem to be related to that "enterprise."  Plaintiffs RICO claims against Defendant Tarini, under 18 U.S.C. § 1962(c) and § 1962(d), are therefore properly dismissed.

### C.  Dismissal of State Law Claims

Where all federal claims are dismissed before a trial begins, "the balance of considerations usually will point to dismissing the state law claims."  *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).  In deciding whether to retain jurisdiction over a plaintiff's state-law claims, this Court should "consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity."  *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having dismissed Plaintiffs' federal claims in their entirety, this Court accordingly declines to hear Plaintiffs' state-law claims.

### V. CONCLUSION

Based on the foregoing reasons, Defendant Steven Tarini's Motion to Dismiss, and the City of Columbus Division of Police, and Kimberly Jacobs, the Chief of Police's joint Motion to Dismiss is **GRANTED**.  (Doc. 7, Doc. 8).

     **IT IS SO ORDERED.**

          **s/Algenon L. Marbley**
          **ALGENON L. MARBLEY**
          **UNITED STATES DISTRICT JUDGE**

**Dated: September 12, 2014**